**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| AARON STERLING, | * | |
| ADC #118220 | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | No. 4:20-cv-01178-JJV |
| | * | |
| DEXTER PAYNE, Director, ADC, *et al.* | * | |
| | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER[1]**

## I.    INTRODUCTION

Aaron Sterling ("Plaintiff") is a prisoner in the Cummins Unit of the Arkansas Division of Correction ("ADC").  On October 5, 2020, he filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983 alleging that on *September 17, 2019,* the ADC Regional Medical Director violated his constitutional rights by refusing to authorize hernia repair surgery that was ordered by another physician.  (Doc. 2 at 4, 9.)  Soon thereafter, I entered an Order explaining the Complaint did not contain a plausible claim because Plaintiff did not explain how the defendants were personally involved in the alleged constitutional violation.  (Doc. 3.)  I gave Plaintiff the opportunity to file an Amended Complaint curing those pleading deficiencies, warned him an Amended Complaint would "render his original Complaint without legal effect," and clarified that only "claims properly set out in the Amended Complaint" would be considered.  (*Id.* at 6.)  Thereafter, Plaintiff filed an Amended Complaint alleging that, *on or after November 16, 2019,* Defendant Dr. Jeffrey Stieve, the ADC Regional Medical Director, violated his constitutional rights by refusing to authorize

---

[1] On February 22, 2021, the parties consented to proceed before a United States Magistrate Judge. (Doc. 17.)

hernia surgery.  (Doc. 6 at 4.)  But, Plaintiff did not renew his allegation regarding the September 17, 2019 decision.  (*Id.*)  Accordingly, Plaintiff was allowed to proceed with his November 16, 2019 claim against Dr. Stieve, while all other claims and Defendants were dismissed without prejudice.  (Doc. 9.)

Defendant Stieve has filed a Motion for Summary Judgment arguing this case should be dismissed without prejudice because Plaintiff failed to properly exhaust his available administrative remedies.  (Docs. 23, 24, 25.)  Plaintiff has not filed a Response, and the time to do so has expired.  Defendant has filed a Notice stating all assertions in his Statement of Facts should be deemed admitted, pursuant to Local Rule 56.1, due to Plaintiff's failure to timely respond. (Docs. 25, 27.)  I agree.[2]  After careful consideration and for the following reasons, the Motion is GRANTED, and Plaintiff's inadequate medical care claim against Defendant Stieve is DISMISSED without prejudice.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d

---

[2] Plaintiff's Response to the Motion for Summary Judgment was due on April 18, 2021.  *See* Local Rule 7.2 (any party opposing a motion "shall serve and file" a response within "fourteen (14) days from the date of the service of the motion"); Fed. R. Civ. P. 6(d) (a party responding by mail has three extra days to do so).  Because Plaintiff did not meet the deadline, the facts in Defendant's Statements of Facts "shall be deemed admitted."  *See* Local Rule 56.1.

923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

III.    ANALYSIS

   A.    The Exhaustion Requirement

   The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

   The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court.  *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885

3

(8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

> **B.** **The ADC's Exhaustion Procedure**

The ADC policies in effect during the relevant time in this case were Administrative Directives 19-20 and 19-34. (Doc. 25-1.) These Directives establish a three-step procedure. First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident. The form must include a brief statement that is specific as to the substance of the issue or complaint to include the date, place, "personnel involved or witnesses," and how the policy or incident affected the inmate submitting the form. (*Id.* § IV(E)(2))(emphasis added.) Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process" may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties. (*Id.* § IV(C)(4)) (emphasis added.) And, the grievance form itself reminds prisoners to include the "name of personnel involved." The problem solver must respond to the informal resolution within three working days. (*Id.* § IV(C)(4) and (7).)

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance to a Health Services Administrator ("HSA) on the same Unit Level Grievance Form within three working days. (*Id.* § IV(E)(11).) The HSA must provide a written response to the formal grievance within twenty working days. (*Id.* § IV(F)(7).)

4

Third, an inmate who is dissatisfied with the HSA's response or does not timely receive a response, must appeal within five working days to the appropriate ADC Assistant Director. (*Id*. § IV(F)(8) and (G).)  The ADC Assistant Director must provide a written response within thirty working days.  (*Id*. at IV(G)(6).)  A decision or rejection of an appeal at this level is the end of the grievance process.  (*Id*.)  Finally, the Directives include the following warning:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit or Claims Commission claim.  If this is not done, the lawsuit or claim may be summarily dismissed.

(*Id*. at § IV(N).)

The Medical Grievance Supervisor says in her sworn declaration that Plaintiff did not fully exhaust any grievances regarding Dr. Stieve's *November 2019* denial of hernia surgery.  (Doc. 25-1 at 3.)  As previously mentioned, Plaintiff's failure to timely dispute that assertion results in that that fact being deemed admitted.  *See* Local Rule 56.1.  Nevertheless, I would like to explain to Plaintiff why a point raised in his Complaint and "Response" to the Answer has no merit.  (Docs. 2, 18.)  Plaintiff says in those documents that he fully exhaust his allegations against Dr. Stieve in CU-19-1272.  But, that grievance, which was resolved on the merits at the third step of the grievance procedure, involved Dr. Stieve's *September 2019* decision and not the *November 2019* decision which is the only claim raised in the Amended Complaint.[3]  (Doc. 2 at 6-9.)

The law on this matter is clear.  A prisoner must  have fully and properly exhaust the specific claim that he is pursuing in his federal lawsuit.  *See Townsend v. Murphy,* 898 F.3d 780, 784 (8th Cir. 2018) (no exhaustion when a prisoner's grievance did not contain "the specific factual

---

[3]  The ADC Assistant Director found the grievance had merit because Dr. Stieve did not discuss the alternative treatment plan with Plaintiff.  (Doc. 2 at 9.)

allegations that would later appear in his federal complaint"); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (finding improper exhaustion when the "ADC was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit). Because Plaintiff did not do so, his November 2019 inadequate medical care claim against Defendant Stieve must be dismissed without prejudice. *Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process, which the Eighth Circuit has explained as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.    CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1.     Defendant Stieve's Motion for Summary Judgment (Doc. 23) is GRANTED, Plaintiff's November 2019 inadequate medical care claim against Defendant Stieve is DISMISSED without prejudice, and this case is CLOSED.

2.     I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from

this Memorandum and Order and the accompanying Judgment would not be taken in good faith.

DATED this 29th day of April 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE